See, also, The Gazelle [Case No. 5,289].

HIGHLANDER, The (SECOR v.). See Case No. 12,604.

## Case No. 6,477.

### The HIGHLAND LIGHT.

[Chase, 150; 2 Am. Law T. Rep. U. S. Cts. 118; 16 Pittsb. Leg. J. 150; 2 Balt. Law Trans. 361; 3 Am. Law. Rev. 778.][1]

Circuit Court, D. Maryland. 1867.

ADMIRALTY JURISDICTION — NEGLIGENCE OF CO-EMPLOYEE—PROCEEDING IN PERSONAM.

1. The admiralty may be styled the humane providence which watches over the rights and interests of those "who go down to the sea in ships, and do their business on the great waters." Its jurisdiction for marine torts, may be said to be co-extensive with the subject. It depends on the locality of the wrong, not upon its extent, character, or the relations of the person injured.

[Cited in The Garland, 5 Fed. 926; The Max Morris, 28 Fed. 884; The Harrisburg, 119 U. S. 207, 7 Sup. Ct. 143.]

2. The widow and son of a hand killed on a steamboat by the negligence of the engineer, have suffered an injury for which they have a remedy against the owners of the vessel.

[See Armstrong v. Beadle, Case No. 541, and note.]

3. The act of congress makes the fact of the injurious escape of steam full prima facie proof of negligence to charge the defendant in all actions against proprietors of steamboats, for injuries occasioned by injurious escape of steam.

4. This case distinguished from that of The Sea Gull [Case No. 12,578]. There the injury

3 [From 22 Law Rep. 473.]
1 [Reported by Bradley T. Johnson, Esq., and here reprinted by permission. 3 Am. Law Rev. 778, contains only a partial report.]

was by the vessel herself to the wife of the libellant, who was an employee on another vessel. The remedy there *held* to have been either in rem or in personam. In this case the injury is to an employee of the owners on their own ship, the injury being caused by the negligence of a co-employee.

[Cited in The Charles Morgan, Case No. 2,618; The Towanda, Id. 14,109; Holmes v. Oregon & C. Ry. Co., 5 Fed. 80; The Sylvan Glen, 9 Fed. 336; The E. B. Ward, Jr., 17 Fed. 458; The Manhasset, 18 Fed. 925.]

5. This court would hesitate to apply to this case the common-law rule that one employee can not hold his employer responsible for injuries caused by the fault of his co-employee. The statute law of Maryland, however, furnishes a clear right and a plain remedy, and the right may be enforced in this court by admiralty processes.

6. It is not necessary to pursue a statutory remedy in order to enforce a statutory right.

7. The acts of congress confine the remedy in rem for injuries from injurious escape of steam to actions brought by passengers—and the remedy in personam against owners for such injuries done to others on board. It is obvious that congress intended by these laws, to provide for all cases of redress for injuries from these causes, and no action for such injuries can be maintained unless sanctioned by its legislation.

[Applied in The Clatsop Chief, 8 Fed. 166. Disapproved in Id. 767.]

8. No remedy in this case can be had in this court, except by an action in personam against the owners, and this libel was, therefore, properly dismissed by the court below.

Price was employed as a hand on the steamer Highland Light, a vessel sailing out of and registered in the port of Baltimore. While navigating waters within the jurisdiction of Maryland, her steam-chimney collapsed and caused the death of Price. Whereupon his widow and son filed their joint libel against the steamer in rem. There was some proof that the owners had exercised due diligence in supervising the steam machinery of the vessel when it was originally put in, but it was clear that the steam-chimney had been remarkably insufficient at the time of the accident.

Robt. J. Brent and Wm. M. Addison, for libellants.

Wallis & Thomas, for respondents.

CHASE, Circuit Justice. This is a libel for damages occasioned by steam escaping from a collapsed steam-chimney of the steamer Highland Light, and causing the death of William Price, the husband of one, and father of the other libellant.

The first question is as to jurisdiction.

In The Sea Gull [Case No. 12,578], we held that the admiralty jurisdiction extends to the redress of injuries to persons on one vessel caused by the negligence of those charged with the navigation of another. And it is abundantly settled (The New World, 16 How. [57 U. S.] 472) that it extends to suits against vessels and owners and masters for injuries to persons on board as passengers, whether carried for hire or gratuitously.

Indeed, the jurisdiction for marine torts in

admiralty may be said to be co-extensive with the subject. It depends on the locality of the wrong, not upon its extent, character, or the relations of the persons injured. Chamberlain v. Chandler [Case No. 2,575].

The admiralty may be styled, not improperly, the humane providence which watches over the rights and interests of those "who go down to the sea in ships, and do their business on the great waters." I entertain no doubt, therefore, upon the general question of jurisdiction. Whether a case is made for its exercise is a different inquiry. And the question now to be considered is whether, in the case before us, damages can be awarded to the libellants, in this form of action in rem, for the injury occasioned to them by the death of their relative.

This question resolves itself into three other questions: 1. Was the injury caused by negligence? 2. Can the libellants have redress in admiralty for the particular injury alleged in the libel? 3. Can they have such redress in the form of action they have adopted? And to these questions I will now endeavor to give an answer.

1. Was the injury caused by negligence?

It was caused by the explosion of the steam-chimney.

The act of July 7, 1838, in its 13th section, provides that "in all suits or actions against proprietors of steamboats, for injuries arising to persons or property from the bursting of the boiler of any steamboat, or the collapse of a flue or other injurious escape of steam, the fact of such bursting, collapse, or other injurious escape of steam, shall be taken as full prima facie evidence, sufficient to charge the defendant or those in his employment with negligence, until he can show that no negligence has been committed by him or those in his employment." 5 Stat. 305.

In this case, the fact of an injurious escape of steam is undisputed. The full prima facie proof of negligence is therefore made. Is the negligence, then, disproved? Have the respondents shown that no negligence has been committed by them or those in their employment?

It is unnecessary here to inquire into degrees of negligence. In the use for navigation of such a powerful and dangerous agent as steam, it was expressly declared by the supreme court, in Philadelphia R. Co. v. Derby, 14 How. [55 U. S.] 486, and repeated in the case of The New World already referred to, that "any negligence may well deserve the epithet of gross." To repel the inference of negligence in this case, then, there must be such clear proof of care and vigilance as will exclude any reasonable belief that there was any negligence whatever on the part of the owners, or any of their employees, which contributed to the explosion.

And I think that the evidence fairly matches this requirement in respect to the original sufficiency of the boilers and other steam apparatus of The Highland Light. But the evidence of the insufficiency, and the remarkable insufficiency of the steam chimney, at the time of the explosion, is equally clear; and it is by no means certain that a somewhat greater degree of care and vigilance on the part of the owners or their engineers, would not have prevented the catastrophe. Indeed, under all the circumstances detailed in the evidence, I am rather led to the conclusion that there was negligence for which the owners are responsible than that there was not. At any rate, under the statutes, in the absence of convincing evidence to the contrary, negligence in this case must be considered as proved.

2. Can the libellants have redress in admiralty for the particular injury alleged in the libel?

The libellants are the widow and son of the man whose injuries occasioned by the negligence thus proved, resulted in death. Their right to compensation is a natural right. And I perceive no more ground for denying redress in admiralty in this case than in The Sea Gull [supra], unless it be found in the circumstance that the man killed was a hand on the boat, and the negligence which caused the injury was that of the engineer, and not that of the owners. It was insisted in argument that this circumstance does distinguish the cases, and that an employee can not have redress against his employer for injuries caused by the negligence of a co-employee. And this is the general rule of the common law (Priestley v. Fowler, 3 Mees. & W. 1), though it is undoubtedly limited in its application by another rule, that "where a master employs a servant in a work of a dangerous character, he is bound to take all reasonable precautions for the safety of that workman" (Paterson v. Wallace, 1 Macq. H. L. Cas. 751).

I should hesitate to hold, even in the absence of statutory provisions, that the first rule ought to be applied in the case now under consideration. In several of the cases cited for the respondents, exceptions or qualifications are made which may fairly be held to take this case out of its application. Farwell v. Boston & W. R. Co., 4 Metc. (Mass.) 49; O'Connell v. Baltimore & O. R. Co., 20 Md. 220.

But the positive law of statutes seems to me to furnish a sufficient rule for guidance in the case of relatives seeking redress for the death of a relative, whether the injury be caused by strangers, or persons who are, in some sense, co-employees.

The act of parliament, commonly known as Lord Campbell's act, introduced the first great change in the common-law rule that personal actions die with the person, by making wrong-doers responsible in damages for injuries resulting in death. 9 & 10 Vict. c. 93, § 1, A. D. 1846. This act recognizes the equitable right to redress for such in-

juries in its title, "An act for compensating the families of persons killed by accidents." Many of the United States have enacted similar statutes, and among these states Maryland has followed quite closely the act of parliament. The law of Maryland (1 Code, 449), like the act of parliament, establishes in one section the general right to redress, and in another provides the mode in which redress may be pursued.

The right is quite separate from the remedy. The rights, like that of a statute lien upon a vessel for repairs in home ports, may be enforced in admiralty by its own processes. It is not necessary to pursue the statutory remedy in order to enforce the statutory rights.

It is clear, therefore, that for an injury such as that proved in this case, the wife and son of the man killed may have redress in admiralty. And the act of 1838, in the section already quoted, seems to contemplate no distinction between actions for injuries to hands employed on board, and to injuries to other persons on board. It appears to regard the negligence of the person employed as the negligence of the owners, and infers the existence of it from the unheeded or too little heeded defects of the steam apparatus.

I incline, therefore, to the opinion that the libellants in this case are entitled to redress against the owners, though the engineer may have been immediately responsible by his own negligence for the injury. It is not necessary, however, in this case, to decide this particular point.

3. The remaining question is, "Are the libellants entitled to redress in the form of action which they have adopted?"

The statute of 1838 recognized, and provided a rule of evidence for actions against owners. It would seem that this statute must have been amended while under legislative consideration. The sixth section made owners and masters responsible for injuries to property of passengers by explosion of boilers, and derangement of engine or machinery, caused by failure to employ competent engineers. But this section seems to have been superseded by the broader provisions of the thirteenth, which, as has been already said, sanctioned actions for all injuries occasioned by bursting of boilers, collapse of flues, or other injurious escape of steam. But no action is sanctioned by this section except against owners, and by the 30th section of the act of 1852 (10 Stat. 69), the action in rem is limited to passengers. It is a fair, if not an inevitable inference, that it was the intention of congress to confine the remedy in rem to passengers, and to allow to others on board injured by the causes enumerated only the remedy in personam. And it is obvious that congress intended to provide for all cases of redress for injuries from these causes, and that no action for such injuries can be maintained unless sanctioned by its legislation.

While, therefore, I am unable to adopt the views of the counsel for the respondents, that parties in the predicament of the libellants have no remedy unless against the engineer of the steamer, I am constrained on the other hand to the conclusion, that no other remedy can be had except an action in personam against the owners. The decree of the district court dismissing the libel against the steamer, must be affirmed.

I venture to add, in the language of Lord Brougham, in Paterson v. Wallace [1 Macq. H. L. Cas. 748], a case in some of its features very similar to this, that "I can not but hope that the defendants will see the propriety of putting an end to the case, by making some voluntary and benevolent compensation to the unfortunate appellants."